**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | Case No. 1:22-cv-00146 |
| ALFAGOMMA AURORA TF LLC and MICHAEL PFOTENHAUER, individually and on behalf of all others similarly situated, | |
| Defendants. | |

**ADMIRAL INSURANCE COMPANY'S
COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES Plaintiff Admiral Insurance Company ("Admiral"), by its attorneys, Litchfield Cavo LLP, and pursuant to 28 U.S.C. § 2201 seeks declaratory judgment and other relief against Defendant Alfagomma Aurora TF LLC and Defendant Michael Pfotenhauer, individually and on behalf of all others similarly situated. In support thereof, Admiral states as follows:

**NATURE OF THE ACTION**

1.       This is an action for declaratory judgment by Admiral seeking a declaration pursuant to 28 U.S.C. § 2201 regarding insurance coverage sought by Alfagomma Aurora TF LLC in connection with an underlying lawsuit brought against it by Michael Pfotenhauer, individually and on behalf of all others similarly situated, in the action styled as *Michael Pfotenhauer v. Alfagomma Aurora TF LLC*, pending as Case No. 2021 L 000251 in the Circuit Court of Kane County, Illinois (the "Underlying Lawsuit").

2.       Through this action, Admiral requests that the Court issue a judgment declaring that the pertinent policies of insurance issued by Admiral do not require that Admiral defend or

indemnify Alfagomma Aurora TF LLC in connection with the Underlying Lawsuit. This judgment is requested to determine an actual controversy between Admiral and Alfagomma Aurora TF LLC regarding the parties' rights and obligations under the subject insurance policies.

## PARTIES, JURISDICTION AND VENUE

3.      Plaintiff Admiral Insurance Company is a Delaware corporation with its principal place of business located in Scottsdale, Arizona. Therefore, Admiral is a citizen of Delaware and Arizona.

4.      Defendant Alfagomma Aurora TF LLC, ("Alfagomma") is a citizen of Illinois as it is an Illinois limited liability company with its principal place of business located at 950 Douglas Road in Batavia, Illinois and the sole member of Alfagomma is Alfagomma Holding USA, Inc., an Illinois corporation with its principal place of business located at 950 Douglas Road in Batavia, Illinois.

5.      Defendant Michael Pfotenhauer ("Pfotenhauer") is a natural person, a citizen of Illinois, and the plaintiff in the Underlying Lawsuit brought on his behalf in the Circuit Court of Kane County, Illinois. Admiral seeks no relief against Pfotenhauer, individually or as representative of the purported class, other than to bind him and the purported class to the outcome of this coverage action.

6.      This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332 in that it arises between citizens of different states and the amount in controversy, including the combined cost of defense and alleged liability in the underlying case, exceeds the sum or value of $75,000.00, exclusive of interest and costs. In addition, this action is brought pursuant to 28 U.S.C. § 2201.

7.      Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(a) and (b), because the Defendants reside in this District and also because events giving rise to the insurance coverage dispute took place in this District.

## THE UNDERLYING LAWSUIT

8.      The Class Action Complaint ("Complaint") was filed in the Underlying Lawsuit on or about May 14, 2021.  A copy of the Complaint filed in the Underlying Lawsuit is attached hereto as Exhibit A.

9.      According to the allegations stated therein, the Complaint was filed to put a stop to the unlawful collection, use, and storage of Pfotenhauer's and the putative Class members' biometric data.

10.     It is alleged in the Complaint that, when employees first begin their jobs at Alfagomma locations, they are required to scan their handprints in its biometric time tracking system as a means of authentication, instead of using only key fobs or other identification cards.

11.     It is alleged that Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), to regulate companies that collect and store Illinois citizens' biometrics, such as handprints.

12.     It is claimed that, despite this law, Alfagomma disregarded its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA.

13.     It is alleged in the Complaint that Alfagomma allegedly violated (and continues to violate) BIPA because it did not:

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their handprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff and the Class's handprints, as required by the BIPA; nor
- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain handprints, as required by the BIPA.

14. Through the Complaint, Pfotenhauer seeks an order: (i) declaring that Alfagomma's conduct violates the BIPA; (ii) requiring Alfagomma to cease the allegedly unlawful activities; and (iii) awarding liquidated damages to Pfotenhauer and the proposed Class.

15. It is claimed that Alfagomma failed to take note of the passage of the BIPA and that, although Alfagomma is presumed to know the law, it continued to collect, store, and use its employees' biometric data in negligent, and potentially willful or reckless, violation of BIPA.

16. It is alleged that, when employees worked at Alfagomma, they are required to have their handprints scanned in order to enroll them in its handprint database, that Alfagomma uses an employee time tracking system that requires employees to use their handprints as a means of authentication, and that employees have to use their handprint to "punch" in to or out of work.

17. It is alleged that Alfagomma failed to inform its employees of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

18. It is alleged that Alfagomma similarly failed to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' hand prints when the initial purpose for collecting or obtaining their hand prints are no longer relevant, as required by the BIPA.

19. It is alleged that an employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Alfagomma databases—or if they ever will be.

20.     Pfotenhauer alleges that, while working for Alfagomma in Illinois, he was required to scan his handprints each time he began and ended a workday so that Alfagomma could use it as an authentication method to track time.

21.     Pfotenhauer claims that Alfagomma subsequently stored his handprint data in its databases, but never informed him of the specific limited purposes or length of time for which it collected, stored, or used handprints.

22.     Alfagomma allegedly also never informed Pfotenhauer of any biometric data retention policy it developed, nor whether it will ever permanently delete his handprint data.

23.     Pfotenhauer claims that he never signed a written release allowing Alfagomma to collect or store his handprint data.

24.     It is claimed that Pfotenhauer was continuously and repeatedly exposed to the risks and harmful conditions created by Alfagomma's alleged violations of BIPA

25.     Pfotenhauer seeks liquidated damages under BIPA as compensation for the injuries Alfagomma has caused.

26.     The Complaint states that the lawsuit was brought on behalf of Pfotenhauer and a purported class of similarly situated individuals, defined as "[a]ll persons who had their handprints collected, captured, received, otherwise obtained, or disclosed by Defendant [Alfagomma] while in Illinois."

27.     The Complaint states that the exact number of class members is unknown, but that Alfagomma has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from hundreds of employees who fall into the definition of the purported class.

28.     As stated in the Complaint, common questions for the purported class include the following:

a)      whether Alfagomma collected, captured, or otherwise obtained Plaintiff's and the class' biometric identifiers or biometric information;

b)      whether Alfagomma properly informed Plaintiff and the class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

c)      whether Alfagomma obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff and the class' biometric identifiers or biometric information;

d)      whether Alfagomma has sold, leased, traded, or otherwise profited from Plaintiff and the class's biometric identifiers or biometric information;

e)      whether Alfagomma developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

f)      whether Alfagomma complies with any such written policy (if one exists); and

g)      whether Alfagomma used Plaintiff and the class' handprints to identify them.

29.     The Complaint states a single cause of action against Alfagomma based on its alleged violation of BIPA (740 ILCS 14/1, et seq.).   Specifically, it is alleged that:

• Alfagomma violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

• Alfagomma violated 740 ILCS 14115(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

• Alfagomma violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

• Alfagomma violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

30.     Pfotenhauer claims that, by collecting, storing, and using his and the purported class' biometric identifiers and biometric information as described in the complaint, Alfagomma violated his and the class' rights to privacy in their biometric identifiers or biometric information.

6

31.     On that basis, Pfotenhauer seeks, on behalf of himself and the purported class of similarly-situated individuals: (1) injunctive and equitable relief as is necessary to protect the interests of Pfotenhauer and the class by requiring Alfagomma to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages for each of Alfagomma's violations of the BIPA pursuant to 740 ILCS 14/20; and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

## THE ADMIRAL POLICIES

32.     Based on the lack of specific allegations in the Complaint concerning the timing of Alfagomma's alleged conduct in violation of BIPA, Admiral seeks a declaration regarding insurance coverage under each policy it issued to Alfagomma, including the general liability and excess liability policies depicted in the following chart (collectively the "Admiral Policies")[1]:

| Policy No. | Policy Period | Type of Coverage |
|---|---|---|
| CA000032484-01 | 11/1/18 to 1/1/20 | General Liability |
| GX000001742-01 | 11/1/18 to 1/1/20 | Excess Liability |
| CA000032484-02 | 1/1/20 to 1/1/21 | General Liability |
| GX000001742-02 | 1/1/20 to 1/1/21 | Excess Liability |
| CA000032484-03 | 1/1/21 to 1/1/22 | General Liability |
| GX000001742-03 | 1/1/21 to 1/1/22 | Excess Liability |

A copy of the Admiral Policies are attached hereto as Exhibits B through G.

**A.     The CGL Policies**

33.     Policy Nos. CA000032484-01, CA000032484-02, and CA000032484-03 (the "CGL Policies") provide commercial general liability coverage ("CGL Coverage") subject to

---

[1] The following discussion provides information regarding certain terms, conditions and exclusions contained in the Admiral Policies.  Admiral refers Alfagomma to the policies themselves for a complete statement of all applicable terms, conditions and exclusions.

limits of liability of $1,000,000 per occurrence for "bodily injury" or "property damage," $1,000,000 for "personal and advertising injury," and a general aggregate limit of $2,000,000.

34. The coverage afforded under the CGL Policies is subject to a $5,000 deductible per claim, including costs incurred to investigate or settle a claim or to defend a "suit".

35. The insuring agreements to Coverage A and Coverage B of the CGL Coverage state as follows (quoted in pertinent part):

*SECTION I — COVERAGES*

*COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

*1. Insuring Agreement*

    *a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:*
        \*      \*      \*

    *b. This insurance applies to "bodily injury" and "property damage" only if:*
    *(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*
    *(2) The "bodily injury" or "property damage" occurs during the policy period; and*

        \*      \*      \*

*COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY*

*1. Insuring Agreement*

    *a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.*

8

> *However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:*
>
> \*     \*     \*
>
> b.    *This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.*

36.    The coverage afforded by the Admiral Policies under Coverage A and Coverage B of the CGL Coverage is subject to the following definitions, quoted in relevant part, which are pertinent to the analysis of this matter:

> 3.    *"Bodily injury" means physical injury, physical sickness or physical disease sustained by any one person, including death resulting from any of these at any time. "Bodily injury" does not include shock or emotional, mental or psychological distress, injury, trauma or anguish, or other similar condition, unless such condition results solely and directly from that one person's prior physical injury, physical sickness or physical disease otherwise covered under this insurance.*[2]
>
> 13.    *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*
>
> 14.    *"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:*
>
> a.    *False arrest, detention or imprisonment;*
> b.    *Malicious prosecution;*
> c.    *The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;*
> d.    *Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;*

---

[2] This definition of "bodily injury" was inserted into the Admiral Policies by the "Bodily Injury Redefined" endorsement (Form AD 08 42 02 16).

e. *Oral or written publication, in any manner, of material that violates a person's right of privacy;*

f. *The use of another's advertising idea in your "advertisement"; or*

g. *Infringing upon another's copyright, trade dress or slogan in your "advertisement".*

17. *"Property damage" means:*

a. *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*

b. *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

*For the purposes of this insurance, electronic data is not tangible property.*

*As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CDROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.*

37. The coverage afforded under Coverage A of the CGL Coverage is subject to the following potentially applicable exclusions:

a. *Expected Or Intended Injury*

*"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.*

e. *Employer's Liability*

*"Bodily injury" to:*

(1) *An "employee" of the insured arising out of and in the course of:*
  (a) *Employment by the insured; or*
  (b) *Performing duties related to the conduct of the insured's business; or*

(2) *The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.*

*This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.*

*This exclusion does not apply to liability assumed by the insured under an "insured contract".*

o.  *Personal And Advertising Injury*

*"Bodily injury" arising out of "personal and advertising injury".*

38.   The coverage afforded under Coverage B of the CGL Coverage is subject to the following potentially applicable exclusion:

a.  *Knowing Violation Of Rights Of Another*

*"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".*

c.  *Material Published Prior To Policy Period*

*"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.*

39.   The coverage afforded by the CGL Policies under both Coverage A and Coverage B of the CGL Coverage is subject to the following language and additional exclusions added by endorsement (Form CG 21 06 05 14) entitled "Exclusion – Access or Disclosure of Confidential or Personal Information and Data-Related Liability – With Limited Bodily Injury Exception":

A.  *Exclusion 2.p. of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:*

*2.   Exclusions*

*This insurance does not apply to:*

*p.   Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability*

*Damages arising out of:*

(1)     *Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or*

(2)     *The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.*

*This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.*

*However, unless Paragraph (1) above applies, this exclusion does not apply to damages because of "bodily injury".*

*As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.*

B.      *The following is added to Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:*

2.      *Exclusions*

*This insurance does not apply to:*

*Access Or Disclosure Of Confidential Or Personal Information*

*"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.*

*This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by*

12

*you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.*

40. The coverage afforded by the CGL Policies under both Coverage A and Coverage B of the CGL Coverage is subject to the following language and additional exclusions added by endorsement (Form AD 68 88 12 13) entitled "Special Exclusions – Joint Form":

<em>PRE-EXISTING DAMAGE EXCLUSION</em>

*It is agreed under Section 1 Coverages, Coverage A Bodily Injury and Property Damage Liability, 1. Insuring Agreement, Paragraphs b (3), c and d are deleted in their entirety and the following exclusion is added to this policy:*

*This insurance does not apply to:*

*1. Any damages arising out of or related to "bodily injury" or "property damage", whether such "bodily injury" or "property damage" is known or unknown,*
   *(a) which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or*
   *(b) which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the "bodily injury" or "property damage" continues during this policy period.*

*2. Any damages arising out of or related to "bodily injury" or "property damage", whether known or unknown, which are in the process of settlement, adjustment or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier).*

*We shall have no duty to defend any insured against any loss, claim, "suit", or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.*

<em>EMPLOYMENT-RELATED PRACTICES EXCLUSION</em>

*A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:*

*This insurance does not apply to:*

*"Bodily injury" to:*

*(1) A person arising out of any "wrongful employment act(s)"; or*

13

\*  \*  \*

*This exclusion applies:*

(1) *Whether any insured may be liable as an employer or in any other capacity;*

(2) *To any obligation to share damages with or repay someone else who must pay damages because of the injury; and*

(3) *Whether the "wrongful employment act(s)" occurs before employment, during employment or after employment of that person.*

B. *The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:*

*This insurance does not apply to:*

*"Personal and advertising injury" to:*

(1) *A person arising out of any "wrongful employment act(s)"; or*
\*  \*  \*

*This exclusion applies:*
(1) *Whether any insured may be liable as an employer or in any other capacity;*
(2) *To any obligation to share damages with or repay someone else who must pay damages because of the injury; and*
(3) *Whether the "wrongful employment act(s)" occurs before employment, during employment or after employment of that person.*

C. *Additional Definitions:*

(1) *"Wrongful employment act(s)" means any of the following actual, alleged or related acts committed by or on behalf of any insured arising out of a potential, actual or post employment relationship with any person:*

\*  \*  \*

(c) *Termination, constructive discharge, wrongful failure to hire, wrongful demotion, retaliation, misrepresentation, infliction of emotional distress, defamation, invasion of privacy, humiliation, wrongful evaluation, or breach of an implied contract or agreement relating to employment,*

14

> *whether arising out of any personnel manual, policy statement or oral representation; or*
>
> \*     \*     \*
>
> (f)     *Failure to comply with any applicable federal, state or local law, regulation, ordinance, rule, guidance document or policy directive related to the prevention of any act described in Paragraph C. (1) (a) through Paragraph C. (1) (d) above; or*
>
> \*     \*     \*

**B.**     **The Excess Policies**

41.     Policy Nos. GX000001742-01, GX000001742-02, and GX000001742-03 (the "Excess Policies") provide excess liability coverage subject to limits of $3,000,000 per loss event and a $3,000,000 aggregate limit.

42.     As stated on Form EX 46 41 04 16, words and phrases that are not defined in the Excess Policies but defined in the "controlling underlying insurance" will have the meaning described in the policy of "controlling underlying insurance".

43.     The "controlling underlying insurance" identified in each of the Excess Policies is the CGL Policy issued by Admiral for the same policy period as the particular Excess Policy (see above). As to Policy No. GX000001742-03, an employer's liability policy issued by Technology Insurance Company is also listed as "controlling underlying insurance" with respect to that type of insurance.

44.     As stated on Form EX 46 41 04 16, terms, conditions and exclusions pertinent to coverage under the Excess Policies, includes the following:

*SECTION I - EXCESS LIABILITY COVERAGE*

*1.*     *Insuring Agreement*

a. *We will pay on behalf of the "insured" the "ultimate net loss" in excess of the "controlling underlying insurance limit" because of "injury or damage" caused by a "loss event" to which this insurance applies, provided the applicable limits of "controlling underlying insurance", as shown in the Schedule Of Controlling Underlying Insurance, have been exhausted by payment of judgments, settlements and, if applicable, costs or expenses.*

b. *The amount we will pay for the "ultimate net loss" is limited as described in Section II – Limits of Insurance.*

c. *This insurance applies to "injury or damage" that is subject to a limit of applicable "controlling underlying insurance" that is specified in the Schedule Of Controlling Underlying Insurance. If any other limit, such as a sublimit, is specified in the "controlling underlying insurance", this insurance does not apply to "injury or damage" arising out of that exposure unless that limit is specified in the Schedule Of Controlling Underlying Insurance.*

d. *If the "controlling underlying insurance" requires, for a particular claim, that the "injury or damage" occur during its policy period in order for that coverage to apply, then this insurance will only apply to that "injury or damage" if it occurs during the policy period of this policy. If the "controlling underlying insurance" requires that the "loss event" causing the particular "injury or damage" take place during its policy period in order for that coverage to apply, then this insurance will apply to the claim only if the "loss event" causing that "injury or damage" takes place during the policy period of this policy.*

e. *The insurance provided under this policy will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this policy will apply. However, the coverage provided under this policy will not be broader than that provided by the applicable "controlling underlying insurance".*

\*  \*  \*

3. *Exclusions*
   *The following exclusions, and any other exclusions added by endorsement, apply to this policy. In addition, the exclusions applicable to any "controlling underlying insurance" apply to this insurance unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this policy.*

*SECTION IV – DEFINITIONS*

*The definitions applicable to any "controlling underlying insurance" also apply to this insurance. In addition, the following definitions apply.*

1.     *"Controlling underlying insurance" means any policy of insurance or self-insurance listed in the Schedule Of Controlling Underlying Insurance that applies to the particular "loss event" for which a claim is made or "suit" is brought.*

4.     *"Injury or damage" means any injury or damage covered by the applicable "controlling underlying insurance" arising from a "loss event".*

6.     *"Loss event" means an occurrence, offense, accident, act, or other event, to which the applicable "controlling underlying insurance" applies.*

9.     *"Ultimate net loss" means the total sum, after reduction for recoveries, or salvages collectible, that the "insured" becomes legally obligated to pay as damages by reason of:*
       *a.     Settlements, judgments, binding arbitration; or*
       *b.     Other binding alternate dispute resolution proceeding entered into with our consent.*
       *"Ultimate net loss" includes costs and expenses if the "controlling underlying insurance" specifies that limits are reduced by costs or expenses.*

## COUNT I
## NO COVERAGE FOR THE UNDERLYING LAWSUIT
## (NO COVERAGE FOR DAMAGES ARISING OUT OF ACCESS TO OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION)

45.     Admiral adopts and repeats the allegations of paragraphs 1 through 44 herein as and for paragraph 45 as though the same were fully set forth herein.

46.     The sole cause of action asserted against Alfagomma in the Underlying Lawsuit concerns the alleged violation of BIPA and seeks statutory damages and injunctive relief relating to the alleged violation of BIPA and allegedly improper collection, storage and use of biometric identifiers and biometric information.

47.     All potentially-pertinent coverages afforded by the Admiral Policies are subject to exclusions relating to damages arising out of access to or disclosure of confidential or personal information.

48.     These exclusions bar coverage for damages arising out "any access to or disclosure of any person's … confidential or personal information" and bar coverage for damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

49.     All damages sought in the Underlying Lawsuit arise from allegedly improper conduct by Alfagomma relating to access to personal biometric identifiers and biometric information.  As a result, the referenced exclusions bar coverage under the Admiral Policies for the claims and damages at issue in the Underlying Lawsuit.

WHEREFORE, Admiral requests a judgment pursuant to 28 U.S.C. §§2201 and 2202 against Alfagomma declaring and awarding the following relief:

A.     Declaring and adjudicating the rights and obligations of the parties with respect to coverage under the Admiral Policies for Alfagomma with respect to the Underlying Lawsuit;

B.     Declaring that Admiral has no duty or obligation under the Admiral Policies to defend or indemnify Alfagomma with respect to the Underlying Lawsuit; and

C.     For such other declaratory relief as the Court deems appropriate.

**COUNT II**
**NO COVERAGE FOR THE UNDERLYING LAWSUIT**
**(NO COVERAGE FOR DAMAGES ARISING**
**OUT OF A WRONGFUL EMPLOYMENT ACT)**

50.     Admiral adopts and repeats the allegations of paragraphs 1 through 44 herein as and for paragraph 50 as though the same were fully set forth herein.

51.     The sole cause of action asserted against Alfagomma concerns the alleged violation of BIPA through the allegedly improper collection, storage and use of biometric identifiers and biometric information.

52. The claims asserted in the Underlying Lawsuit are made by Pfotenhauer individually and on behalf of an alleged class of hundreds of Alfagomma employees.

53. All damages sought in the Underlying Lawsuit arise from allegedly improper conduct by Alfagomma relating to access to and collection of personal biometric identifiers and biometric information which allegedly pose privacy risks in violation of BIPA, a statute enacted to protect against invasion of privacy relating to personal biometric information.

54. The Admiral Policies contain exclusions which exclude coverage under for injury to a person arising out of any "wrongful employment act(s)."

55. As defined by the Admiral Policies, "wrongful employment act" includes actual or alleged acts committed by or on behalf of any insured arising out of a potential, actual or post-employment relationship with any person, including invasion of privacy as well as the actual or alleged failure to comply with the applicable federal, state or local law, regulation, ordinance, rule, guidance document or policy directive related to the prevention of an invasion of privacy.

56. The "employment-related practices" exclusions bar coverage under the Admiral Policies for the claims and damages at issue in the Underlying Lawsuit.

WHEREFORE, Admiral requests a judgment pursuant to 28 U.S.C. §§2201 and 2202 against Alfagomma declaring and awarding the following relief:

A. Declaring and adjudicating the rights and obligations of the parties with respect to coverage under the Admiral Policies for Alfagomma with respect to the Underlying Lawsuit;

B. Declaring that Admiral has no duty or obligation under the Admiral Policies to defend or indemnify Alfagomma with respect to the Underlying Lawsuit; and

C. For such other declaratory relief as the Court deems appropriate.

## COUNT III
## NO COVERAGE FOR THE UNDERLYING LAWSUIT
## (NO PERSONAL AND ADVERTISING INJURY COVERAGE)

57.     Admiral adopts and repeats the allegations of paragraphs 1 through 44 herein as and for paragraph 57 as though the same were fully set forth herein.

58.     The sole cause of action asserted against Alfagomma concerns the alleged violation of BIPA through the allegedly improper collection, storage and use of biometric identifiers and biometric information.

59.     Under the Admiral Policies, coverage is afforded for damages because of "personal and advertising injury" to which the insurance applies.

60.     The Admiral Policies' definitions of "personal and advertising injury" provide that such term includes injury, including consequential "bodily injury," that arises out of one or more of the enumerated offenses.

61.     Based on the claims stated in the Underlying Lawsuit, the only potentially relevant offense for purposes of the definition of "personal and advertising injury" concerns the "oral or written publication, in any manner, of material that violates a person's right of privacy."

62.     Therefore, the claims must be based on some form of "oral or written publication" of material in order for any allegedly resulting damages to qualify as damages because of "personal and advertising injury".

63.     The Complaint alleges that Alfagomma has violated BIPA because it allegedly did not properly obtain consent in connection with the collection, use, and storage of biometric identifiers and biometric information.

64.     It is not alleged that Alfagomma published biometric identifiers or biometric information in any oral or written manner.

65. Because there has been no alleged publication of material that violates a person's right of privacy, the Underlying Lawsuit does not state a claim for damages because of "personal and advertising injury" as that term is defined by the Admiral Policies and, therefore, the coverage afforded by the Admiral Policies for "personal and advertising injury" does not apply to the claims stated in the Underlying Lawsuit.

66. Coverage under the Admiral Policies is subject to an exclusion for any "personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

67. The claims at issue in the Underlying Lawsuit are based on allegations that Alfagomma failed to comply with known statutory obligations under BIPA. Therefore, any damages arising from Alfagomma's failure to comply with BIPA arose from a knowing violation of privacy rights and are not covered by the Admiral Policies.

68. To the extent that the claims at issue in the Underlying Lawsuit involve damages because of "personal and advertising injury", which is disputed, coverage under the Admiral Policies is not afforded for "personal and advertising injury" arising from the publication of material first published prior the inception date of the Admiral Policies.

WHEREFORE, Admiral requests a judgment pursuant to 28 U.S.C. §§2201 and 2202 against Alfagomma declaring and awarding the following relief:

A. Declaring and adjudicating the rights and obligations of the parties with respect to coverage under the Admiral Policies for Alfagomma with respect to the Underlying Lawsuit;

B. Declaring that Admiral has no duty or obligation under the Admiral Policies to defend or indemnify Alfagomma with respect to the Underlying Lawsuit; and

21

C.      For such other declaratory relief as the Court deems appropriate.

**COUNT IV**
**NO COVERAGE FOR THE UNDERLYING LAWSUIT**
**(NO BODILY INJURY OR PROPERTY DAMAGE COVERAGE)**

69.     Admiral adopts and repeats the allegations of paragraphs 1 through 44 herein as and for paragraph 69 as though the same were fully set forth herein.

70.     The sole cause of action asserted against Alfagomma concerns the alleged violation of BIPA through the allegedly improper collection, storage and use of biometric identifiers and biometric information.

71.     Under the Admiral Policies, coverage is afforded for damages because of "bodily injury" and "property damage" to which the insurance applies.

72.     The Admiral Policies' definitions of "bodily injury" provide that such term includes bodily injury, disability, sickness or disease sustained by a person.  The definitions also include mental anguish and mental injury, but only if it results from physical injury, physical sickness, or physical disease.

73.     The Admiral Policies' definitions of "property damage" provide that such term includes physical injury to tangible property, including all resulting loss of use of that property, and loss of use of tangible property that is not physically injured.  Electronic data does not qualify as tangible property.

74.     The Complaint contains allegations of alleged exposure to risks and harmful conditions based on Alfagomma's alleged violations of the BIPA, but does not contain allegations of physical injury to any party and, therefore, does not state a claim for damages because of "bodily injury" as that term is defined by the Admiral Policies.

75.     There are similarly no allegations in the complaint of physical injury to tangible property or of loss of use of tangible property and, therefore, the Complaint does not state a claim for damages because of "property damage" as that term is defined by the Admiral Policies.

76.     Damages for "bodily injury" or "property damage" are only potentially covered if the "bodily injury" or "property damage" was caused by an "occurrence," a term defined to mean an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

77.     The allegations in the Underlying Lawsuit are based on intentional, knowing conduct by Alfagomma and, therefore, any damages that might be awarded against Alfagomma cannot be said to have been caused by an "occurrence."

78.     Coverage is excluded under the Admiral Policies for "bodily injury" or "property damage" which is expected or intended by the insured.

79.     Coverage is excluded under the Admiral Policies for "bodily injury" which arises out of "personal and advertising injury."

80.     Coverage is not afforded under the Admiral Policies for "bodily injury" or "property damage" which occurs outside the policy periods of the Admiral Policies.

81.     Coverage is not afforded under the Admiral Policies for "bodily injury" or "property damage" which first occurred or began to occur prior to the inception date of the Admiral Policies.

82.     Coverage is not afforded under the CGL Policies for "bodily injury" to employees of Alfagomma.

83.     Coverage is not afforded under the Excess Policies for "bodily injury" to employees of Alfagomma unless such coverage is afforded by the "controlling underlying insurance."

WHEREFORE, Admiral requests a judgment pursuant to 28 U.S.C. §§2201 and 2202 against Alfagomma declaring and awarding the following relief:

A.     Declaring and adjudicating the rights and obligations of the parties with respect to coverage under the Admiral Policies for Alfagomma with respect to the Underlying Lawsuit;

B.     Declaring that Admiral has no duty or obligation under the Admiral Policies to defend or indemnify Alfagomma with respect to the Underlying Lawsuit; and

C.     For such other declaratory relief as the Court deems appropriate.


Dated:   January 10, 2022

Respectfully submitted,


By:     /s/ Brian M. Reid

Brian M. Reid, Esq.
LITCHFIELD CAVO LLP
303 W. Madison Street
Suite 300
Chicago, Illinois 60606
(312) 781-6617
(312) 781-6630 (Fax)
Email:  reid@litchfieldcavo.com

*Attorneys for Admiral Insurance Company*