# EXHIBIT A

Kane County Circuit Court    THERESA E. BARREIRO    ACCEPTED: 5/14/2021 3:46 PM    By: LF    Env #13337746

**IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT
KANE COUNTY, ILLINOIS**

| | |
|---|---|
| MICHAEL PFOTENHAUER, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | 21-L-000251 |
| v. | Case No.: |
| ALFAGOMMA AURORA TF LLC. | |
| *Defendant.* | |

Clerk of the Circuit Court
Kane County, Illinois
5/14/2021 3:43 PM
FILED/IMAGED

## CLASS ACTION COMPLAINT

Plaintiff Michael Pfotenhauer ("Michael" or "Plaintiff") brings this Class Action Complaint against Defendant Alfagomma Aurora TF LLC, ("Alfa" or "Defendant") to put a stop to their unlawful collection, use, and storage of Plaintiff's and the putative Class members' sensitive biometric data. Plaintiff, for Plaintiff's Class Action Complaint, alleges as follows upon personal knowledge as to Plaintiff's own acts and experiences and, as to all other matters, upon information and belief.

### NATURE OF THE ACTION

1.      Defendant is an industrial hose and tube facility in Batavia, Illinois.

2.      When employees first begin their jobs at Alfa locations, they are required to scan their handprints in its biometric time tracking system as a means of authentication, instead of using only key fobs or other identification cards.

3.      While there are tremendous benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be

changed or replaced if stolen or compromised— handprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a handprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.

4.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as handprints.

5.     Despite this law, Alfa disregarded its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, Alfa has violated (and continues to violate) the BIPA because it did not:

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their handprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff and the Class's handprints, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain handprints, as required by the BIPA.

6.     Accordingly, this Complaint seeks an order: (i) declaring that Defendant's conduct violates the BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

### PARTIES

7.     Plaintiff is a natural person residing in the State of Illinois.

8.     Defendant is a Domestic Limited Liability Corporation doing business in Illinois.

### JURISDICTION AND VENUE

9.     This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because

2

Defendant conducts business transactions in Illinois and has committed tortious acts in Illinois.

10.     Venue is proper in Kane County because Defendant operates throughout this County and "resides" in Kane County within the meaning of 735 ILCS § 5/2-102(a).

## FACTUAL BACKGROUND

### I.     The Biometric Information Privacy Act.

11.     In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

12.     In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that unique biometric identifiers could now be sold to unknown third parties.

13.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois

House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

14.     The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

15.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

16.     Biometric identifiers include retina and iris scans, voiceprints, scans of fingerprints and face geometry, and—most importantly here— handprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

17.     The BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See* 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting

4

such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

18.     Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

## II.     Alfa Violates the Biometric Information Privacy Act.

19.     By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

20.     Unfortunately, Alfa failed to take note of the passage of the BIPA despite that it has been in effect for over a decade and Alfa is presumed to know the law. Alfa continued to collect, store, and use its employees' biometric data in negligent, and potentially willful or reckless, violation of BIPA.

21.     Specifically, when employees worked at Alfa, they are required to have their handprints scanned in order to enroll them in its handprint database.

22.     Alfa uses an employee time tracking system that requires employees to use their handprints as a means of authentication. Unlike a traditional timeclock, employees have to use their handprint to "punch" in to or out of work.

23. Alfa failed to inform its employees of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

24. Alfa similarly failed to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' hand prints when the initial purpose for collecting or obtaining their hand prints are no longer relevant, as required by the BIPA. An employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Alfa databases—or if they ever will be.

25. The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Alfa's —whose employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But Alfa disregards these obligations, and instead unlawfully collects, stores, and uses its employees' biometric identifiers and information without proper consent.

26. Ultimately, Alfa disregards its employees' statutorily protected privacy rights by violating the BIPA.

## FACTS SPECIFIC TO PLAINTIFF

27. Plaintiff worked for Defendant in Illinois.

28. As an employee, Alfa required Plaintiff to scan Plaintiff's handprints so that it could use it as an authentication method to track time. Alfa subsequently stored Plaintiff's handprints data in its databases.

6

29.     Each time Plaintiff began and ended a workday, Alfa required a scan of Plaintiff's handprints.

30.     Alfa never informed Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used handprints.

31.     Similarly, Alfa never informed Plaintiff of any biometric data retention policy it developed, nor whether it will ever permanently delete handprints.

32.     Plaintiff never signed a written release allowing Alfa to collect or store handprints.

33.     Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Alfa violations of the BIPA alleged herein.

34.     Plaintiff now seeks liquidated damages under BIPA as compensation for the injuries Alfa has caused.

## CLASS ALLEGATIONS

35.     **Class Definition**: Plaintiff brings this action pursuant to 735 ILCS 5/2-801 on behalf of Plaintiff and a Class of similarly situated individuals, defined as follows:

> All persons who had their handprints collected, captured, received, otherwise obtained, or disclosed by Defendant while in Illinois.

The following people are excluded from the Class: (1) any Judge presiding over this action and members of their families; (2) Alfa, Alfa's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

36.     **Numerosity**: The exact number of Class members is unknown to Plaintiff at this

7

time, but it is clear that individual joinder is impracticable. Alfa has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

37.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

        a)  whether Defendant collected, captured, or otherwise obtained Plaintiff's and the Class' biometric identifiers or biometric information;

        b)  whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

        c)  whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff and the Class' biometric identifiers or biometric information;

        d)  whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff and the Class's biometric identifiers or biometric information;

        e)  whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

        f)  whether Defendant complies with any such written policy (if one exists); and

        g)  whether Defendant used Plaintiff and the Class' hand prints to identify them.

38.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and

Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

39.   **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Alfa's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Alfa's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

### CAUSE OF ACTION
### Violation of 740 ILCS 14/1, *et seq.*
### (On Behalf of Plaintiff and the Class)

40.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

41.   The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a

9

customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information...." 740 ILCS 14/15(b) (emphasis added).

42.     The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.,* when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

43.     Unfortunately, Alfa fails to comply with these BIPA mandates.

44.     Alfa qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

45.     Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Alfa (in the form of their handprints), as explained in detail in Section II. *See* 740 ILCS 14/10.

46.     Plaintiff and the Class' biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

47.     Alfa violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

10

48.     Alfa violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

49.     Alfa violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

50.     Alfa violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

51.     By collecting, storing, and using Plaintiff's and the Class' biometric identifiers and biometric information as described herein, Alfa violated Plaintiff's and the Class' rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq*.

52.     On behalf of themselves and the Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Defendant's to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages for each of Defendant's violations of the BIPA pursuant to 740 ILCS 14/20; and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that the Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class defined above,

11

appointing Plaintiff as representative of the Class, and appointing his counsel as Class Counsel;

B.      Declaring that Defendant's actions, as set out above, violate the BIPA;

C.      Awarding statutory damages for each of Defendant's violations of the BIPA, pursuant to 740 ILCS 14/20;

D.      Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

F.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

G.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

H.      Awarding such other and further relief as equity and justice may require.


Dated: May 14, 2021                 Respectfully submitted,

                                    **Michael Pfotenhauer individually and on behalf
                                    of all others similarly situated,**

**NOTICE**
**BY ORDER OF THE COURT THIS CASE IS HEREBY SET FOR
CASE MANAGEMENT CONFERENCE ON THE DATE BELOW.
FAILURE TO APPEAR MAY RESULT IN THE CASE BEING
DISMISSED OR AN ORDER OF DEFAULT BEING ENTERED.**
**Judge: Murphy, James R**
**7/29/2021 9:00 AM**

                                    _Mara Baltabols_____
                                    One of Plaintiff's Attorneys

                                    David Fish
                                    dfish@fishlawfirm.com
                                    Mara Baltabols
                                    mara@fishlawfirm.com
                                    THE FISH LAW FIRM, P.C.
                                    200 East Fifth Avenue, Suite 123
                                    Naperville, Illinois 60563
                                    Tel: 630.355.7590
                                    Fax: 630.778.0400 / docketing@fishlawfirm.com


12